15-1302 JK

# UNITED STATES COURT OF APPEALS
## THIRD CIRCUIT

| | | |
|---|---|---|
| **JAMES RIFFIN** | * | |
| **Petitioner** | | Case No.: |
| | * | |
| **v.** | | |
| | * | |
| **SURFACE TRANSPORTATION** | | |
| **BOARD    and** | * | **FD No.  35873** |
| | | **D&H Lines** |
| **UNITED STATES OF AMERICA** | * | |
| **Respondents** | | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *

### PETITION FOR REVIEW OF
### SURFACE TRANSPORTATION BOARD
### DECISION SERVED ON JANUARY 14, 2015

Notice is hereby given this 3rd day of February, 2015, that Petitioner, James Riffin, herewith  petitions the United States Court of Appeals for the THIRD Circuit for review of the Decision of the Respondent, Surface Transportation Board, entered (Served) on **January 14, 2015**, in the case entitled:   *Norfolk Southern Railway Company – Acquisition and Operation – Certain Rail Lines of the Delaware and Hudson Railway Company, Inc.,* STB Finance Docket No. 35873, STB served January 14, 2015.

A copy of the STB's decision is included in the 3rd Volume of Petitioner's Record Extract, on **p. A-25,** filed in the 3rd Circuit Case No. 14-4839, which is incorporated by reference herein.

James Riffin, *Pro Se*
1941 Greenspring Drive
Timonium, MD 21093
(443) 414-6210

## PETITIONERS' DISCLOSURE OF
## AFFILIATIONS AND FINANCIAL INTEREST

Your Petitioner is not a publicly held entity, nor does he have a parent corporation. He has a 100 % ownership interest. No other publicly held corporation or other publicly held entity has a direct financial interest in the outcome of this litigation. Your Petitioner is not a trade association. This case did not arise out of a bankruptcy proceeding.

## CERTIFICATE OF SERVICE

I hereby certify that on the ___4th___ day of February, 2015, a copy of the foregoing Petition for Review of STB's January 14, 2015 Decision in FD 35873, was served by UPS, postage prepaid, upon the Respondents. [Carolyn Chachkin, Asst. Gen'l Counsel, STB, 395 E Street SW, Washington, DC, 20423; Robert Nicholson, Appellate §, Anti-Trust Div., Dept. Of Justice, 950 PA Ave NW, Wash, DC 20530.] A copy was also sent by first class mail, postage prepaid, and a copy was e-mailed to the Parties of Record in STB FD 35873, noted below.

_____
James Riffin

First class mail:

Samuel J. Nasca / SMART:    Gordon P. MacDougall  1025 Connecticut Ave
NW    Washington, DC 20036


E-mail:

Brotherhood of MOW Employees:  Richard  Edelman:  REdelman@odsalaw.com
Brotherhood of Locomotive
   Engineers & Trainmen:    Kevin Moore:        bletdiv191@hotmail.com
CNJ / Alma / Pace Glass:    Thomas McFarland:    mcfarland@aol.com
D&H Railways:        David Rifkind:    david.rifkin@stinsonleonard.com
IAM  District Lodge 19:    Jeffrey A. Bartos    Jbartos@geclaw.com
    Kyle A. DeCant    Kdecant@geclaw.com
Genesee & Wyoming, Inc.:    Eric Hocky:        ehocky@clarkhill.com
    Allison M. Fergus:    afergus@gwrr.com
Maryland DOT:        Charles Spitulnik:    cspitulnik@kaplankirsch.com
NY DOT:            Keith Martin:    keith.martin@dot.ny.gov
National Grain & Feed Assoc:  Randall C. Gordon:    ngfa@ngfa.org
National Grain & Feed Assoc:  Thomas Wilcox:    twilcox@gkglaw.com
Norfolk Southern:        Williams Mullins:    wmullins@bakerandmiller.com
PPL Energy:        Kelvin Dowd:    kjd@sloverandloftus.com
PA NE Regional RR Auth:    Lawrence Malski:    lmalski@pnrra.org
Samuel J. Nasca / SMART:    Gordon P. MacDougall:  gpmacd@mindspring.com
Saratoga & N. Creek Ry:    John D. Heffner:    John.Heffner@strasburger.com
Seda-Cog Railroads:        Jeffery K. Stover:    jra@seda-cog.org
U.S. Clay Producers Assoc:    Vincent P. Szeligo:    vszeligo@wsmoslaw.com

Federal Register / Vol. 79, No. 245 / Monday, December 22, 2014 / Notices

2014, unless the Board grants GRR's petition for partial waiver of 49 CFR 1150.32(b) to permit the exemption to become effective on December 26, 2014, in which case the due date for stays will be established in the Board's decision acting on GRR's petition.

An original and 10 copies of all pleadings, referring to Docket No. FD 35888, must be filed with the Surface Transportation Board, 395 E Street SW., Washington, DC 20423–0001. In addition, a copy of each pleading must be served on Louis E. Gitomer, Esq., Law Offices of Louis E. Gitomer, LLC, 600 Baltimore Avenue, Suite 301, Towson, MD 21204.

Board decisions and notices are available on our Web site at *WWW.STB.DOT.GOV.*

Decided: December 17, 2014.

By the Board, Rachel D. Campbell, Director, Office of Proceedings.

**Brendetta S. Jones,**
*Clearance Clerk.*

[FR Doc. 2014–29866 Filed 12–19–14; 8:45 am]

**BILLING CODE 4915–01–P**

## DEPARTMENT OF TRANSPORTATION

### Surface Transportation Board

**[Docket No. EP 290 (Sub-No. 5) (2015–1)]**

### Quarterly Rail Cost Adjustment Factor

**AGENCY:** Surface Transportation Board.
**ACTION:** Approval of rail cost adjustment factor.

**SUMMARY:** The Board has approved the first quarter 2015 Rail Cost Adjustment Factor (RCAF) and cost index filed by the Association of American Railroads. The first quarter 2015 RCAF (Unadjusted) is 0.946. The first quarter 2015 RCAF (Adjusted) is 0.405. The first quarter 2015 RCAF–5 is 0.383.

**DATES:** *Effective Date:* January 1, 2015.

**FOR FURTHER INFORMATION CONTACT:** Pedro Ramirez, (202) 245–0333. Federal Information Relay Service (FIRS) for the hearing impaired: (800) 877–8339.

**SUPPLEMENTARY INFORMATION:** Additional information is contained in the Board's decision, which is available on our Web site, *http://www.stb.dot.gov.* Copies of the decision may be purchased by contacting the Office of Public Assistance, Governmental Affairs, and Compliance at (202) 245–0238. Assistance for the hearing impaired is available through FIRS at (800) 877–8339.

This action will not significantly affect either the quality of the human environment or energy conservation.

Decided: December 16, 2014.

By the Board, Chairman Elliott, Vice Chairman Miller, and Commissioner Begeman.

**Jeffrey Herzig,**
*Clearance Clerk.*

[FR Doc. 2014–29863 Filed 12–19–14; 8:45 am]

**BILLING CODE 4915–01–P**

## DEPARTMENT OF TRANSPORTATION

### Surface Transportation Board

**[Docket No. FD 35873]** [1]

### Norfolk Southern Railway Company—Acquisition and Operation—Certain Rail Lines of the Delaware and Hudson Railway Company, Inc.

**AGENCY:** Surface Transportation Board, Department of Transportation.

**ACTION:** Decision No. 1 in Docket No. FD 35873; Notice of Acceptance of Primary Application and Related Filings; Issuance of Procedural Schedule.

**SUMMARY:** The Surface Transportation Board (Board) is accepting for consideration the application filed November 17, 2014, by Norfolk Southern Railway Company (NSR or Applicant), and two related filings. The primary application seeks Board approval under 49 U.S.C. 11323–25 of the acquisition of control of 282.55 miles of rail line owned by Delaware and Hudson Railway Company, Inc. (D&H), a wholly owned, indirect subsidiary of Canadian Pacific Railway Company (CP), by NSR, a Class I railroad. This proposal is referred to as the Control Transaction.

The related filings are two notices of exemption filed by NSR to modify existing trackage rights agreements. The notice of exemption filed in FD 34209 (Sub-No. 1) provides for the modification of an existing trackage rights agreement granted by D&H to NSR. This modification would allow NSR to retain trackage rights over approximately 17.45 miles of rail line between milepost 484.85 ± in the vicinity of Schenectady, N.Y., and CPF 467 in the vicinity of Mechanicville, N.Y., including the right to use such tracks within D&H's Mohawk Yard. The notice of exemption filed in FD 34562 (Sub-No. 1) provides for the modification of the Saratoga-East Binghamton Trackage Rights Agreement granted by D&H to NSR. This modification would allow NSR to retain trackage rights between milepost 37.10

[1] This decision also embraces *Norfolk S. Ry.—Trackage Rights Exemption—Delaware & Hudson Ry.*, FD 34209 (Sub-No. 1), and *Norfolk S. Ry.—Trackage Rights Exemption—Delaware & Hudson Ry.*, FD 34562 (Sub-No. 1).

± of D&H's Canadian Main Line in Saratoga Springs, N.Y., and CPF 484 at Schenectady. Both of these notices of exemption would remove from the respective trackage rights agreements rail lines that NSR would purchase under the Control Transaction, and would allow NSR to retain needed trackage rights over the remaining lines. Neither notice of exemption would provide for new trackage rights.

The Board finds that the application is complete and that the Control Transaction is a minor transaction based upon the preliminary determination that the Control Transaction clearly will not have any anticompetitive effects and that, to the extent any anticompetitive effects exist, they will clearly be outweighed by the transaction's anticipated contribution to the public interest in meeting significant transportation needs. 49 CFR 1180.2(b)(1), (c). The Board makes this preliminary determination based on the evidence presented in the application and the record to date. The Board emphasizes that this is not a final determination, and may be rebutted by subsequent filings and evidence submitted into the record for this proceeding. The Board will give careful consideration to any claims that the Control Transaction would have anticompetitive effects that are not apparent from the application and the record to date.

**DATES:** The effective date of this decision is December 16, 2014. Any person who wishes to participate in this proceeding as a party of record (POR) must file, no later than December 29, 2014, a notice of intent to participate. All comments, protests, requests for conditions, and any other evidence and argument in opposition to the primary application and related filings, including filings by the U.S. Department of Justice (DOJ) and the U.S. Department of Transportation (DOT), must be filed by January 15, 2015. Responses to comments, protests, requests for conditions, other opposition, and rebuttal in support of the primary application or related filings must be filed by March 31, 2015. See Appendix A (Procedural Schedule). A final decision in this matter will be served no later than May 15, 2015. Further procedural orders, if any, will be issued by the Board as necessary.

**ADDRESSES:** Any filing submitted in this proceeding must be submitted either via the Board's e-filing format or in the traditional paper format. Any person using e-filing should attach a document and otherwise comply with the instructions found on the Board's Web

site at *www.stb.dot.gov* at the "E-FILING" link. Any person submitting a filing in the traditional paper format should send an original and 10 paper copies of the filing (and also an electronic version) to: Surface Transportation Board, 395 E Street SW., Washington, DC 20423–0001. In addition, one copy of each filing in this proceeding must be sent (and may be sent by email only if service by email is acceptable to the recipient) to each of the following: (1) Secretary of Transportation, 1200 New Jersey Avenue SE., Washington, DC 20590; (2) Attorney General of the United States, c/o Assistant Attorney General, Antitrust Division, Room 3109, Department of Justice, Washington, DC 20530; (3) William A. Mullins (representing NSR), Baker & Miller PLLC, 2401 Pennsylvania Ave. NW., Suite 300, Washington, DC 20037; and (4) any other person designated as a POR on the service list notice (as explained below, the service list notice will be issued as soon after December 29, 2014, as practicable).

**FOR FURTHER INFORMATION CONTACT:** Jonathon Binet, (202) 245–0368. [Assistance for the hearing impaired is available through the Federal Information Relay Service (FIRS) at 1–800–877–8339.]

**SUPPLEMENTARY INFORMATION:** Applicant, a Class I railroad, is a wholly owned subsidiary of Norfolk Southern Corporation, a publicly held noncarrier holding company. D&H, a Class II railroad, is a wholly owned, indirect subsidiary of CP. Applicant seeks the Board's prior review and authorization pursuant to 49 U.S.C. 11321–25 for the acquisition of the lines collectively known as the D&H South Lines. More specifically, these lines consist of approximately 267.15 route miles of the D&H Freight Main Line between Sunbury/Kase, Pa., (milepost 752) and Schenectady, N.Y. (milepost 484.85), and 15.40 miles of the Voorheesville Running Track between Voorheesville Junction (milepost A 10.9) and Delanson, N.Y. (milepost 499/milepost A 26.320), for a total of 282.55 miles of line currently owned by D&H. Applicant also has filed two notices of exemption seeking to modify existing trackage rights agreements between NSR and D&H, as discussed above and embraced by this case.

Applicant provides three primary purposes for pursuing the Control Transaction: (1) The Control Transaction would benefit shippers through improved service and increased operating efficiencies; (2) the Control Transaction would preserve and

enhance competition in the Northeast surface transportation market; and (3) the Control Transaction would preserve and possibly increase jobs on the D&H South Lines by integrating D&H employees with NSR operations and organically growing traffic on the lines.

*Financial Arrangements.* According to the Applicant, if the Control Transaction is approved, NSR will pay D&H $217 million in cash. The Control Transaction would not require the issuance of any new securities or any other financial arrangement that would require the Board's approval. The Control Transaction would not result in any new debt or increase NSR's annual interest expense. Applicant further states that the Control Transaction would result in operating expense savings of $2.7 million annually.

*Passenger Service Impacts.* Applicant states that the Control Transaction would not affect passenger rail service because there is no scheduled passenger service over the D&H South Lines. Applicant states that passenger service does exist on the portion of the D&H lines over which Applicant seeks to modify trackage rights in FD 34209 (Sub-No. 1), but Applicant does not anticipate any adverse effects on passenger service as a result of the transaction.

*Discontinuances/Abandonments.* Applicant states that it does not anticipate any transaction-related line abandonments. Applicant does expect D&H will be filing for authority to discontinue trackage rights over certain NSR lines because D&H has determined those trackage rights are no longer economically justified.[2]

*Public Interest Considerations.* Applicant states that the Control Transaction would have no anticompetitive effects. According to the Applicant, the Control Transaction would not create a monopoly and would not result in any restraint of trade in freight surface transportation in any region of the United States. Applicant further states that, even if there are anticompetitive effects to the Control Transaction, they are clearly outweighed by the substantial public benefits of the transaction.

Applicant states that there are no anticompetitive effects to the Control Transaction because there are no

customers served directly by both NSR and D&H on the D&H South Lines. Applicant further states that its competitive analysis shows there are four potential 2-to-1 corridors (*i.e.*, corridors where shippers served by two carriers before the Control Transaction would be served by one after its consummation, if approved) as a result of the Control Transaction, but contends that none of these are "true" 2-to-1 corridors because there are independent alternatives to NSR and D&H in these corridors. Applicant states that the shippers and receivers utilizing these corridors would only experience a *de minimis* competitive effect as a result of the Control Transaction. In addition, Applicant points to two new commercial agreements that NSR and D&H have agreed to enter into at closing of the Control Transaction, if approved, as evidence that there would be no anticompetitive effects. Applicant states that the first agreement would ensure shippers with existing contracts and rate authorities with D&H would be able to continue to operate under those contracts or rate authorities with D&H or NSR, as applicable under the agreement, until they expire or are renewed or amended. Applicant states that the second agreement would ensure that shippers located on short lines that currently connect with the D&H South Lines and NSR lines would have continued commercial access to both NSR and D&H.

Applicant also states that there would be substantial public benefits to the Control Transaction. Applicant states that shippers would benefit from the Control Transaction as it would align ownership with use, which would ensure adequate investment in the D&H South Lines to support NSR traffic and projected growth on the lines. Applicant also states that this would also result in more sustainable and reliable service for shippers on the D&H South Lines and promote operating efficiencies. In addition, Applicant states that this transaction would increase competition in the Northeast surface transportation market by strengthening both NSR and D&H. Finally, Applicant states that the Control Transaction would benefit employees on the D&H South Lines by providing continued employment that might otherwise be lost due to the potential for eventual reduction in service on the lines if they remain under D&H's control. Applicant also states that employees would benefit from NSR's expected expansion and growth of the D&H South Lines over time.

*Time Schedule for Consummation.* Applicant intends to consummate control of the D&H South Lines as soon

---

[2] The D&H trackage rights over NSR lines that Applicant states will be involved in D&H's request(s) for discontinuance authority are: (1) From Lehighton, Pa., to Allentown/Bethlehem, Pa.; (2) from Allentown/Bethlehem, Pa., to Oak Island, N.J.; (3) from Sunbury, Pa., to Harrisburg, Pa.; (4) from Harrisburg to Reading, Pa., to Philadelphia, Pa.; and (5) from Harrisburg to Perryville, Pa., to the Washington, DC area.

as a Board decision approving the Control Transaction becomes effective, should the Board authorize the proposed Control Transaction.

*Environmental Impacts.* Applicant states that the Control Transaction is exempt from environmental reporting requirements under 49 CFR 1105.6(c)(2) because the environmental impacts of the Control Transaction fall below the thresholds established in 49 CFR 1105.7(e)(4) and (5).

*Historic Preservation Impacts.* Applicant states that, under 49 CFR 1105.8(b)(1) and (3), the Control Transaction is exempt from historic preservation reporting requirements because rail operations would continue after Applicant's purchase of the D&H South Lines. Applicant states that it has no plans to dispose of or alter properties subject to the Board's jurisdiction that are 50 years old or older.

*Labor Impacts.* Applicant states that it does not anticipate any NSR employees being adversely affected by the Control Transaction, though the transaction may adversely affect 254 active D&H employees who operate over the D&H South Lines involved in the Control Transaction. Applicant states that it anticipates hiring approximately 150 of the 254 D&H employees through its standard hiring process, and that it anticipates the remaining employees would be retained by D&H or offered positions with another CP affiliate. In addition, Applicant states that the Control Transaction may create new jobs on the D&H South Lines, as Applicant believes the transaction may allow NSR to grow traffic on the lines. Applicant contends that any NSR or D&H employees adversely impacted by the Control Transaction would be entitled to labor protective conditions in accordance with *New York Dock Railway—Control—Brooklyn Eastern District Terminal* (New York Dock), 360 I.C.C 60, *aff'd New York Dock Railway v. United States,* 609 F.2d 83 (2d Cir. 1979), as modified by *Wilmington Terminal Railroad—Purchase & Lease—CSX Transportation Inc.* (Wilmington Terminal), 6 I.C.C. 2d 799, 814–26 (1990), *aff'd sub nom. Railway Labor Executives' Ass'n v. ICC,* 930 F.2d 511 (6th Cir. 1991).

*Related Filings.* In connection with this transaction, two notices of exemption were filed under 49 CFR 1180.2(d)(7).

*FD 34209 (Sub-No. 1).* In FD 34209 (Sub-No. 1), Applicant filed a verified notice of exemption under 49 CFR 1180.2(d)(7) to amend an existing trackage rights agreement between NSR and D&H involving trackage rights authorized by the Board in *Norfolk*

*Southern Railway Company—Trackage Rights Exemption—Delaware & Hudson Railway Company,* FD 34209 (STB served July 25, 2002). The existing trackage rights extend over approximately 284.6 miles of CP's main line, between NSR's connection with CP at milepost 752.0 near Sunbury, Pa., and CP's connection with Guilford Rail System at milepost 467.40 at Mechanicville, N.Y. While the Control Transaction would allow NSR to acquire and operate the majority of this trackage, the new trackage rights agreement would allow NSR to retain approximately 17.45 miles of previously authorized trackage rights between milepost 484.85 ± in the vicinity of Schenectady, N.Y., and CPF 467 in the vicinity of Mechanicville. Applicant states that the retained trackage rights are necessary for NSR's continued access to its Mechanicville terminal and its continued interchange with Pan Am Southern LLC.

The parties intend to consummate this transaction upon the approval and consummation of the Control Transaction, should the Board approve that transaction. Applicant states that, if the transaction in FD 35873 is approved, NSR would become the owner of the portion of line between Sunbury, Pa., and Schenectady, N.Y., over which it currently has trackage rights authorized in FD 34209. As a condition to use of this exemption, Applicant states that any employees adversely affected by the transaction would be protected by the conditions set forth in *Norfolk & Western Railway—Trackage Rights—Burlington Northern, Inc.,* 354 I.C.C. 605 (1978), as modified in *Mendocino Coast Railway—Lease & Operate—California Western Railroad,* 360 I.C.C. 653 (1980).

*FD 34562 (Sub-No. 1).* In FD 34562 (Sub-No. 1), Applicant filed a verified notice of exemption under 49 CFR 1180.2(d)(7) to amend another existing trackage rights agreement between NSR and D&H, this one involving trackage rights authorized by the Board in *Norfolk Southern Railway Company—Trackage Rights Exemption—Delaware & Hudson Railway Company, Inc.,* FD 34562 (STB served Oct. 21, 2004). The existing trackage rights extend over approximately 155.24 miles of D&H lines as follows: (1) Between milepost 37.10 ± of D&H's Canadian Main Line in Saratoga Springs, N.Y., and the point of connection between D&H's Canadian Main Line and D&H's Freight Main Line at CPF 480, located at milepost 21.70 ± of D&H's Canadian Main Line, a total distance of approximately 15.4 miles; (2) between milepost 480.36 ± and milepost 611.15 ± of D&H's Freight Main Line in Binghamton, N.Y., a

distance of approximately 130.79 miles; and (3) between milepost 611.15 ± and milepost 620.20 ± of D&H's Freight Main Line (including tracks into and within D&H's East Binghamton Yard) in Binghamton, a distance of approximately 9.05 miles. This amended trackage rights agreement would allow NSR to retain the portion of the previously authorized overhead trackage rights between milepost 37.10 ± of D&H's Canadian Main Line in Saratoga Springs and CPF 484 at Schenectady, N.Y. Applicant states that the retained trackage rights are needed for NSR's continued access and use of the line.

The parties also intend to consummate this transaction upon the approval and consummation of the Control Transaction, should the Board approve that transaction. Applicant states that, if the transaction in FD 35873 is approved, NSR would become the owner of the portion of the line between Binghamton and Schenectady, N.Y., over which it currently has trackage rights authorized in FD 34562. As a condition to use of this exemption, Applicant states that any employees adversely affected by the transaction would be protected by the conditions set forth in *Norfolk & Western Railway—Trackage Rights—Burlington Northern, Inc.,* 354 I.C.C. 605 (1978), as modified in *Mendocino Coast Railway—Lease & Operate—California Western Railroad,* 360 I.C.C. 653 (1980).

*Primary application and related filings accepted.* The Board finds that the proposed Control Transaction would be a "minor transaction" under 49 CFR 1180.2(c), and the Board accepts the primary application for consideration because it is in substantial compliance with the applicable regulations governing minor transactions. *See* 49 U.S.C. 11321–26; 49 CFR 1180. The Board is also accepting for consideration the two related filings, which are also in compliance with the applicable regulations. The Board reserves the right to require the filing of supplemental information as necessary to complete the record.

The statute and Board regulations treat a transaction that does not involve two or more Class I railroads differently depending upon whether or not the transaction would have "regional or national transportation significance." 49 U.S.C. 11325. Under our regulations, at 49 CFR 1180.2, a transaction that does not involve two or more Class I railroads is to be classified as "minor"—and thus not having regional or national transportation significance—if a determination can be made that either: (1) The transaction clearly will not have

any anticompetitive effects; or (2) any anticompetitive effects will clearly be outweighed by the anticipated contribution to the public interest in meeting significant transportation needs. A transaction not involving the control or merger of two or more Class I railroads is "significant" if neither of these determinations can clearly be made.

Nothing in the record thus far suggests that the Control Transaction would have anticompetitive effects, and any such effects that might result from the Control Transaction would appear, from the face of the application and the record to date, to be clearly outweighed by the Control Transaction's contribution to the public interest in meeting significant transportation needs. The Control Transaction involves 282.55 miles of rail line in a relatively small geographic area of Pennsylvania and New York.[3] Moreover, NSR states that approximately 80% of the traffic over the lines subject to the application is currently transported by NSR under its trackage rights agreements with D&H. Thus, as the application states, the Control Transaction would align ownership with usage. This would appear to provide public benefits, including promoting operating efficiencies and securing NSR's routes in the region, which would provide NSR with incentives to maintain and invest in the lines. In addition, because NSR and D&H have agreed to enter into two commercial agreements to ensure continued commercial access to both NSR and D&H, it does not appear that any shipper (on the D&H South Lines or on the short lines connecting with the D&H South Lines or NSR) would have fewer competitive rail alternatives as a result of the Control Transaction. Therefore, the Board finds the proposed Control Transaction to be a "minor transaction."

The Board has received several statements in support of the Control Transaction, as well as two objections to the "minor transaction" designation and several other elements of NSR's application. The statements in support

generally express the commenters' belief that the Control Transaction would increase regional competition and efficiencies, and request the Board's expedited review and approval of the application. In addition, on December 8, 2014, NSR filed a List of Supporting Parties and Submission of Statements in Support of the Transaction, which included statements supporting the transaction from 78 shippers, short line railroads, and public agencies, some of whom also filed separately with the Board.

On December 9, 2014, Samuel J. Nasca, on behalf of SMART/ Transportation Division, New York State Legislative Board (SMART/TD–NY), filed a reply to the Application and the two related trackage rights exemption filings. On December 10, 2014, CNJ Rail Corporation (CNJ) filed a reply in opposition to the petition to establish a procedural schedule and motion to reject the application as incomplete.[4] NSR filed responses to these replies on December 11, 2014, and December 10, 2014, respectively.

SMART/TD–NY contends that the Application was not complete until November 25, 2014, when NSR amended its November 17, 2014 application with errata. SMART/TD–NY therefore argues that the 30-day period for the Board to consider whether or not to accept NSR's application does not expire until December 26, 2014. Based on the contents of NSR's original filing and its November 25, 2014 supplement, the Board has had sufficient time to consider whether to accept NSR's application, to determine that this is a minor transaction as defined by the Board's regulations, and to set an appropriate procedural schedule. Accordingly, the Board will serve this decision within 30 days after Applicant filed its original application.[5]

SMART/TD–NY further asserts that the Board should apply labor protective conditions in accordance with New York Dock, rather than Wilmington Terminal. NSR responds that, in line

sale transactions involving at least one Class I carrier (including "minor line sale transactions involving joint ownership of lines and swaps of trackage rights"), the applicable labor protection standards are the New York Dock conditions as modified in Wilmington Terminal. The Board will address this issue in its final decision.

With respect to the substance of the Application, SMART/TD–NY argues that the Control Transaction is not minor because it is of regional or national transportation significance due to the fact that D&H is an indirect subsidiary of CP, which is a Class I railroad that is competitive with NSR. SMART/TD–NY argues that, accordingly, the Board cannot find that the Control Transaction would not clearly have any anti-competitive effects or that any such effects would be clearly outweighed by the public interest. SMART/TD–NY also states that the rail transportation involved in the Control Transaction is broader than is presented in the application, in that it "extends westward beyond the Buffalo gateway, as well as eastward into New England."

Despite SMART/TD–NY's assertions, the Control Transaction, as noted above, only involves rail lines in a relatively small geographic area of Pennsylvania and New York. D&H is an independent subsidiary of CP, and, consistent with Board precedent, D&H is the relevant party to this transaction.[6] NSR has met its burden of proof in preliminarily showing that the Control Transaction is a minor transaction. SMART/TD–NY has failed to provide the Board with sufficient evidence to rebut that preliminary finding.

CNJ similarly argues that the Control Transaction is not minor because, "in essence," it involves two Class I railroads, as D&H is a subsidiary of CP. As discussed above, and consistent with past Board decisions, D&H, and not CP, is the proper entity for the Board to consider when analyzing this transaction.[7]

CNJ further argues that the transaction is not minor because it would have anticompetitive effects and alludes to two routes on the Delaware-Lackawanna Railroad Company, Inc. (DL) for which competition for "potential" traffic may

---

[3] As Applicant notes, the Board has classified numerous transactions having a larger scope than the Control Transaction as "minor," including at least two in the same part of the country. See, e.g., Canadian Nat'l Ry.—Control—Wis. Cent. Transp. Corp., FD 34000 (STB served May 9, 2001) (acquisition of over 2,464 route miles); Kan. City S.—Control—Kan. City S. Ry., FD 34342 (STB served Nov. 29, 2004) (acquisition of 536 route miles); Norfolk S. Ry.—Joint Control & Operating/ Pooling Agreements—Pan Am S. LLC, FD 35147 (STB served June 26, 2008) (involving 438 route miles of track and trackage rights in five states); CSX Transp. Inc. & Delaware & Hudson Ry.—Joint Use Agreement, FD 35348 (STB served May 27, 2010) (involving approximately 345 miles).

[4] On December 12, 2014, Alma Realty Corporation and Pace Glass, Inc. joined CNJ's motion to reject the Application on the ground that the Application is not complete. On December 12, 2014, NSR submitted a letter in opposition to Alma Realty and Pace Glass' letter joining CNJ's motion.

[5] SMART/TD–NY makes two additional procedural arguments. SMART/TD–NY argues that the Board should deny NSR's Motion for a Protective Order. NSR's Motion for a Protective Order will be addressed in a separate decision issued by the Director, Office of Proceedings. SMART/TD–NY also argues that the Board should consolidate the Control Transaction with the two notices of exemption filed by NSR in FD 34209 (Sub-No. 1) and FD 34562 (Sub-No. 1). As discussed elsewhere in this decision, this decision embraces those notices of exemption.

[6] See CSX Transp., Inc. & Del. & Hudson Ry.— Joint Use Agreement, FD 35348 (STB served May 27, 2010) (finding that a transaction involving CSX Transportation, Inc., a Class I railroad, and D&H, a Class II railroad and independent subsidiary of CP, was a minor transaction because it did not involve two or more Class I railroads).

[7] See CSX Transp., Inc. & Del. & Hudson Ry.— Joint Use Agreement, FD 35348 (STB served May 27, 2010). CNJ admits that the Control Transaction "is not technically 'a merger or control of two Class I railroads[.]'"

be reduced from two carriers to one. CNJ asserts that the only way to restore competition for these potential 2-to-1 markets is through the filing of a responsive trackage rights application. NSR responds that the commodities that CNJ argues could be routed over the lines (municipal solid waste and recycled glass) are not currently moved over the lines, nor are there any indications that such shipments are even feasible in the future. NSR also states that CSX Transportation, Inc. (CSX) appears to serve the location where the alleged routes originate.

CNJ provides no support for its assertion that the Control Transaction would have anticompetitive effects. CNJ asserts only a "realistic potential" that these 2-to-1 routings may exist, while NSR states that no such routings currently exist. Nor have any potential or existing shippers on those routes opposed the classification of this transaction as minor. Moreover, the filing of responsive trackage rights applications is not the sole method by which potential anticompetitive effects, if any, could be cured. The Board, after the record in this proceeding is fully developed, has the ability to deny NSR's application or to approve the Control Transaction subject to conditions that would mitigate or eliminate any deleterious effects on regional or national transportation. Thus, CNJ has not provided the Board with sufficient evidence to rebut a preliminary finding that this transaction should be classified as minor.

In addition, CNJ argues that NSR's application should be rejected as incomplete because it has not included all relevant filings. CNJ states that NSR's application includes reference to discontinuance applications that it expects D&H will file with regard to certain trackage rights,[8] and that in order for NSR's application here to be complete, NSR would need to include either those applications or adverse discontinuance applications for those trackage rights. CNJ argues that NSR is asking the Board to evaluate these discontinuances, even though those applications have not been filed with the Board. NSR argues that the Board may assess the Control Transaction, because it is sufficiently independent from any potential Board decision on the discontinuances.

CNJ has failed to demonstrate that the trackage rights applications it is concerned about should have been included in NSR's application. CNJ appears to be referencing the same trackage rights that NSR states in its

application are "not economically justified" independent of this application.[9] The D&H trackage rights run over NSR lines that are not part of the D&H Short Lines at issue in this Control Transaction. Therefore, the Board need not address these trackage rights in this proceeding. As a result, CNJ has not demonstrated that NSR's application is incomplete.

In sum, based on the information provided in the Application and the record to date, the Board finds the proposed Control Transaction to be a minor transaction under 49 CFR 1180.2(c).[10] Such a categorization does not mean that the proposed Control Transaction is insignificant or not of importance. Indeed, the Board will carefully review the proposed Control Transaction to make certain that it does not substantially lessen competition, create a monopoly, or restrain trade and that any anticompetitive effects are outweighed by the public interest. *See* 49 U.S.C. 11324(d)(1)–(2). The Board also may condition the Control Transaction to mitigate or eliminate any deleterious effects on regional or national transportation.

*Procedural Schedule.* The Board has considered Applicant's request (filed November 17, 2014) for an expedited procedural schedule under which the Board would be required to issue its final decision before the statutory deadline of 180 days after the filing of the application. Applicant's proposed procedural schedule would have the Board set the due date for responses to comments, protests, requests for conditions, and other opposition and rebuttal in support of the application on March 17, 2015, 15 days before the Board is required to conclude evidentiary proceedings under 49 U.S.C. 11325(d)(2). As this would be the conclusion of evidentiary proceedings, this would then require the Board to issue a final decision by May 1, 2015, because the Board is required to issue a final decision "by the 45th day after the date on which it concludes the evidentiary proceedings."[11] This may be in error, as Applicant's petition states that the proposed procedural schedule "provides the full statutory time for the Board to issue its final decision," and the proposed schedule in Appendix A to the petition lists Friday, May 15, 2015, as the proposed deadline for a final decision.[12] In the interest of

allowing time for the record to develop fully, the Board will set the procedural schedule to allow the full 180 days for review.

The Board has also considered, and rejected, SMART/TD–NY's and CNJ's arguments regarding the procedural schedule for this proceeding.[13]

For further information respecting dates, see the Appendix A (Procedural Schedule).

*Notice of Intent To Participate.* Any person who wishes to participate in this proceeding as a POR must file with the Board, no later than December 29, 2014, a notice of intent to participate, accompanied by a certificate of service indicating that the notice has been properly served on the Secretary of Transportation, the Attorney General of the United States, and Mr. Mullins.

If a request is made in the notice of intent to participate to have more than one name added to the service list as a POR representing a particular entity, the extra name will be added to the service list as a "Non-Party." The list will reflect the Board's policy of allowing only one official representative per party to be placed on the service list, as specified in Press Release No. 97–68 dated August 18, 1997, announcing the implementation of the Board's "One Party-One Representative" policy for service lists. Any person designated as a Non-Party will receive copies of Board decisions, orders, and notices but not copies of official filings. Persons seeking to change their status must accompany that request with a written certification that he or she has complied with the service requirements set forth at 49 CFR 1180.4, and any other requirements set forth in this decision.

*Service List Notice.* The Board will serve, as soon after December 29, 2014 as practicable, a notice containing the official service list (the service-list notice). Each POR will be required to serve upon all other PORs, within 10 days of the service date of the service-list notice, copies of all filings previously submitted by that party (to the extent such filings have not previously been served upon such other

---

[8] *See* NSR Pet. n.3.

---

[9] *See* NSR Pet. 27–28 & n.24.

[11] 49 U.S.C. 11325(d)(2).

[12] Applicant's petition also states that "the proposed procedural schedule provides for issuance of a final Board decision by May 7, 2015." Based on the full text of the petition and the schedule

---

proposed in Appendix A to the petition, this appears to also be in error.

[13] While SMART/TD–NY argues that the Board should revise NSR's proposed procedural schedule to reflect the significance of the Control Transaction, the Board has preliminarily concluded that the Control Transaction is a "minor" transaction, not a "significant" transaction. Moreover, despite CNJ's assertion that NSR's proposed procedural schedule is misleading because it does not include a deadline by which the public must object to the "minor" classification, the Board does not require an applicant to indicate such a deadline when proposing a procedural schedule.

parties). Each POR will also be required to file with the Board, within 10 days of the service date of the service-list notice, a certificate of service indicating that the service required by the preceding sentence has been accomplished. Every filing made by a POR after the service date of the service-list notice must have its own certificate of service indicating that all PORs on the service list have been served with a copy of the filing. Members of the United States Congress (MOCs) and Governors (GOVs) are not parties of record and need not be served with copies of filings, unless any Member or Governor has requested to be, and is designated as, a POR.

*Service of Decisions, Orders, and Notices.* The Board will serve copies of its decisions, orders, and notices only on those persons who are designated on the official service list as either POR, MOC, GOV, or Non-Party. All other interested persons are encouraged to secure copies of decisions, orders, and notices via the Board's Web site at *"www.stb.dot.gov"* under "E–LIBRARY/ Decisions & Notices."

*Access to Filings.* Under the Board's rules, any document filed with the Board (including applications, pleadings, etc.) shall be promptly furnished to interested persons on request, unless subject to a protective order. 49 CFR 1180.4(a)(3). The application and other filings in this proceeding are available for inspection in the library (Room 131) at the offices of the Surface Transportation Board, 395 E Street SW., in Washington, DC, and will also be available on the Board's Web site at *"www.stb.dot.gov"* under "E–LIBRARY/Filings." In addition, the application may be obtained from Mr. Mullins at the address indicated above.

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

*It is ordered:*

1. The primary application in FD 35873 and the related filings in FD 34209 (Sub-No. 1) and FD 34562 (Sub-No. 1) are accepted for consideration.

2. The parties to this proceeding must comply with the procedural schedule adopted by the Board in this proceeding as shown in Appendix A.

3. The parties to this proceeding must comply with the procedural requirements described in this decision.

4. This decision is effective on December 16, 2014.

Decided: December 16, 2014.

By the Board, Chairman Elliott, Vice Chairman Miller, and Commissioner Begeman.

**Brendetta Jones,**
*Clearance Clerk.*

**Appendix A: Procedural Schedule**

November 17, 2014—Motion for Protective Order filed. Application and Motion to Establish Procedural Schedule filed.
December 16, 2014—Board notice of acceptance of application served (to be published in the **Federal Register** on December 22, 2014).
December 29, 2014—Notices of intent to participate in this proceeding due.
January 15, 2015—All comments, protests, requests for conditions, and any other evidence and argument in opposition to the application, including filings of DOJ and DOT, due.
March 31, 2015—Responses to comments, protests, requests for conditions, and other opposition due. Rebuttal in support of the application due.
May 15, 2015—Date by which a final decision will be served.
June 15, 2015 [14]—Date by which a final decision will become effective.

[FR Doc. 2014–29835 Filed 12–19–14; 8:45 am]

**BILLING CODE 4915–01–P**

---

## DEPARTMENT OF THE TREASURY

### Notice of Roundtable Discussion on Financial Access for Money Services Businesses (MSBs)

**AGENCY:** Offices of Terrorism and Financial Intelligence, International Affairs, and Domestic Finance, U.S. Department of the Treasury (Treasury).

**ACTION:** Meeting Notice.

**SUMMARY:** Treasury is announcing a January 13, 2015 roundtable discussion on financial access for money services businesses (MSBs). Treasury is hosting the roundtable to share the U.S. Government perspective on issues pertaining to financial access for MSBs and to hear from industry.

**DATES:** The roundtable will be held on January 13, 2015 from 9:00 a.m. to 3:00 p.m. Eastern Standard Time.

**ADDRESSES:** Department of the Treasury, Main Treasury Building, 1500 Pennsylvania Avenue NW., Washington, DC 20220.

**FOR FURTHER INFORMATION CONTACT:** *FinancialAccess@treasury.gov.*

**SUPPLEMENTARY INFORMATION:** Treasury is inviting various members of the U.S. Government, regulatory community, banking and credit union sectors, and MSB sector to participate. In addition, Treasury invites other interested parties,

[14] The final decision will become effective 30 days after it is served.

including industry representatives, to send requests to attend. Due to space restrictions, attendance will be limited, but all parties are invited to provide comments and/or questions to be raised at the roundtable.

Requests to attend as well as comments and/or questions to be raised at the roundtable can be sent to *FinancialAccess@treasury.gov.* Treasury will give preference in attendance to industry stakeholders on a first-come-first-serve basis. Parties will be contacted directly by email no later than Tuesday, January 6, 2015 if selected to attend the event.

Requests to attend the roundtable and/or provide written comments or questions must be received on or before January 2, 2015. All statements received, including attachments and other supporting materials, are part of the public record and subject to public disclosure. You should submit only information that you wish to make available publicly.

**Jennifer Fowler,**
*Deputy Assistant Secretary for Terrorist Financing and Financial Crimes.*
**Melissa Koide,**
*Deputy Assistant Secretary for Consumer Policy.*
**Alexia Latortue,**
*Deputy Assistant Secretary for International Development Policy.*

[FR Doc. 2014–29928 Filed 12–19–14; 8:45 am]

**BILLING CODE 4810–25–P**

---

## DEPARTMENT OF VETERANS AFFAIRS

[OMB Control No. 2900–0132]

### Proposed Information Collection (Application in Acquiring Specially Adapted Housing and Special Home Adaptation Grant) Activity: Comment Request

**AGENCY:** Veterans Benefits Administration, Department of Veterans Affairs.

**ACTION:** Notice.

**SUMMARY:** The Veterans Benefits Administration (VBA), Department of Veterans Affairs (VA), is announcing an opportunity for public comment on the proposed collection of certain information by the agency. Under the Paperwork Reduction Act (PRA) of 1995, Federal agencies are required to publish notice in the **Federal Register** concerning each proposed collection of information, including each proposed revision of a currently approved collection, and allow 60 days for public comment in response to the notice. This